IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN DRIZOS, | ) |
| Plaintiff, | ) Civil Action No. 19-1651 |
| v. | ) Judge Cathy Bissoon |
| PNC INVESTMENTS LLC, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

I. **MEMORANDUM**

Plaintiff Stephen Drizos alleges that he was unlawfully terminated from his employment as a financial advisor for PNC Investments LLC ("PNC"). Plaintiff alleges the termination was the result of retaliation and discrimination under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq. ("ADA") and the Pennsylvania Human Relations Act, 43 P.S. § 951-963 ("PHRA"). See Complaint (Doc. 1) at Counts I, III, VI, VII. Plaintiff also alleges that Defendant failed to accommodate his disabilities under the ADA and PHRA. Id. at Counts II, VI (as alternative argument).[1] Finally, Plaintiff alleges that PNC interfered with his rights under the Family and Medical Leave Act, 29 U.S.C. § 2611 et seq. ("FMLA") and retaliated against him for his invocation of these rights. Id. at Count IV, V. On June 23, 2021,

---

[1] While Plaintiff alleges claims based upon his alleged bipolar disorder in his Complaint, no facts or argument have been proffered to support any claims of discrimination, retaliation or failure to accommodate with respect to his bipolar disorder. In other words, Plaintiff has abandoned any claims regarding his bipolar disorder. In addition, when asked whether Plaintiff requested any kind of accommodation from PNC for his bipolar disorder, Plaintiff indicated he did not. Plaintiff's Deposition ("Pl. Dep.") (Doc. 37-2) 154:10-12. As such, the Court will evaluate any disability-related claims only with respect to Plaintiff's alcoholism. Summary judgment is appropriate on any claims related to Plaintiff's alleged bipolar disorder.

Defendant filed a Motion for Summary Judgment ("Motion") (Doc. 35). For the reasons below, Defendant's Motion will be granted.

**A. Facts**

Plaintiff became a financial advisor for PNC in 2015. Defendant's Statement of Facts ("SOF") (Doc. 37) ¶ 1; Plaintiff's Response to Defendant's Statement of Facts ("RSOF") (Doc. 45) ¶ 1. Plaintiff's supervisor was Wendy O'Brien. SOF ¶ 5; RSOF ¶ 5. Plaintiff worked out of one or more of PNC's branches, but his main branch was PNC Bank's Lebanon Shops Branch, where the branch manager was Amy Rhome-Smith. SOF ¶¶ 2-3; RSOF ¶¶ 2-3. Plaintiff did not report to Rhome-Smith. SOF ¶ 4; RSOF ¶ 4. Several months prior to his first leave of absence, Plaintiff told O'Brien that he was an alcoholic. SOF ¶ 13; RSOF ¶ 13. Plaintiff applied and was approved for an intermittent leave of absence to treat his alcoholism for some time in February and March 2017. SOF ¶ 17; RSOF ¶ 17.[2] Plaintiff returned from this leave to his financial advisor position with the same pay and benefits. SOF ¶ 18; RSOF ¶ 18. Plaintiff missed several meetings in May 2017, and O'Brien gave Plaintiff a verbal warning regarding his attendance. SOF ¶¶ 19-21; RSOF ¶¶ 19-21. Plaintiff requested and was approved for FMLA leave in late May 2017. SOF ¶ 22; RSOF ¶ 22. Plaintiff took FMLA leave from May 30 through August 30, 2017. SOF ¶ 23; RSOF ¶ 23. After this leave, Plaintiff returned to his financial advisor position with the same pay and benefits. SOF ¶ 24; RSOF ¶ 24.

While PNC's call-out procedures apply to all employees, O'Brien did not discipline or formally set expectations for any other financial advisor because no other financial advisor under her supervision repeatedly failed to show up to their branch when expected or to attend meetings.

---

[2] Plaintiff and Defendant have slightly different dates for this first leave, February 11 through March 9, 2017 and February 11 through March 22, 2017, respectively, but both parties agree that the leave occurred.

2

SOF ¶ 42; RSOF ¶ 42.  While the record is unclear as to when O'Brien began enforcing call-out procedures for Plaintiff, those procedures were in place as of at least October 24-25, 2017, when Plaintiff was absent from work due to a car accident and Plaintiff failed to inform O'Brien of the reason for his absence after his release from the hospital.  SOF ¶¶ 38-40; RSOF ¶¶ 38-40. Plaintiff again failed to follow call-out procedures when he did not call O'Brien to notify her of his absences on April 11, 2018 and May 24, 2018.  SOF ¶¶ 43, 46; RSOF ¶¶ 43, 46.  On May 31 and June 1, 2018, Plaintiff indisputably was absent from work.  SOF ¶ 47; RSOF ¶ 47.  Plaintiff did not notify O'Brien prior to his absence.  Id.  Plaintiff does not dispute this but contends instead that he took sick days on those days and that he sent an email to O'Brien and others at 10:48 a.m. — well after the start of the day — on May 31, 2018, letting them know he would be working from home.  Id.

As a result of these transgressions, O'Brien placed Plaintiff on a final written warning on June 7, 2018.  SOF ¶ 48; RSOF ¶ 48.  On June 25, 2018, Plaintiff did not report to the branch to work, and he did not contact O'Brien prior to his absence.  SOF ¶ 51; RSOF ¶ 51.  Plaintiff admits that his failure to report to the branch on this date without calling O'Brien was a violation of his final written warning.  SOF ¶ 52; RSOF ¶ 52.  Because Plaintiff was on a final written warning for attendance, PNC terminated Plaintiff's employment on June 26, 2018.  SOF ¶ 53; RSOF ¶ 53.  It is undisputed that Plaintiff was aware that given his precarious status, any additional serious transgressions prior to February 21, 2020, could result in Plaintiff's immediate termination.  Plaintiff's Deposition ("Pl. Dep.") (Doc. 37-2) 155:13-157:19.

### B. Discrimination under ADA and PHRA

To establish a *prima facie* discrimination case under the ADA, "a plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job,

3

with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination." Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010).[3]  PNC argues that Plaintiff cannot establish a *prima facie* case. Brief in Support of Motion ("Brief") (Doc. 36) at 8-10.  Plaintiff argues that he was qualified and that regular in-person appearances were not necessary for his job.  Response in Opposition ("Response") (Doc. 44) at 4-8.  The Court need not resolve this dispute, however, because Plaintiff's claims fail under a pretext analysis regardless.  Kelly v. Univ. of Pennsylvania Health Sys., 708 F. App'x 60, 62–63 (3d Cir. 2017).

Axiomatically, to demonstrate pretext, "[Plaintiff] cannot simply show that the employer's decision was wrong or mistaken, but must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." Kelly, 708 F. App'x at 63 (citing Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (alterations, citations, and quotation marks omitted)).  Simply put, the Court finds there was no pretext here.

PNC's proffered legitimate, nondiscriminatory reason is that Plaintiff violated call-out procedures while on a final written warning.  In arguing that this was pretext for discrimination, Plaintiff makes much of the fact that Plaintiff was previously allowed to work from home with

---

[3] PHRA claims are analyzed in the same fashion as their analogous federal counterparts — in this case the ADA.  Bialko v. Quaker Oats Co., 434 F. App'x 139, 142 n.5 (3d Cir. 2011) ("The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds") (internal quotations and citations omitted).  As such, Plaintiff's PHRA claims will be treated coextensively with Plaintiff's ADA claims.

no complaints, and that even when he was not present at the branch, he was able to "report to work" because he was working from home. This, however, is a red-herring — Plaintiff's termination is not related to his work from home, but rather it is about Plaintiff's failure to adhere to PNC's call-out procedures.[4] It is undisputed that Plaintiff was on a final written warning, and he admits he understood that he had to contact O'Brien in advance of the workday if he was calling off. Pl. Dep. 170:14-171:18. It is unclear how Plaintiff's termination can be discriminatory and related to his alcoholism when he readily admits that he knew he was on a final written warning, he knew that he could be terminated for another violation of PNC's policy and admits that he indeed committed a violation of that policy. Id.

In an effort to demonstrate pretext, Plaintiff points to temporal proximity and increased expectations and surveillance of him after his return from his second leave for alcoholism-related rehabilitation. Call-out procedures were in place as of at least October 24-25, 2017, when Plaintiff was in a car accident a couple months after his return from his second leave. SOF ¶¶ 38-40; RSOF ¶¶ 38-40. Notably, as to this car accident and resulting absence from work, Plaintiff specifically indicates that "that neither O'Brien nor any other person at PNC Investments knew of Mr. Drizos' intoxicated state until he testified to the same at his deposition and thus that information could never been relied upon as part of any discipline." See RSOF ¶ 38. As such, at least with respect to this particular event, Plaintiff argues that PNC raising an issue regarding Plaintiff's lack of adherence to call-out procedures could not have been based on

---

[4] Tangentially, while Plaintiff believes it was permissible for him to work from home, PNC avers financial advisors are prohibited from working from home, and Plaintiff has not pointed to anything in the record to refute this, other than his say-so. SOF ¶ 11. Moreover, whether Plaintiff was working from home is immaterial, as the reason for his discipline and termination is his failure to follow call-out procedures.

animus related to Plaintiff's alcoholism, because PNC did not know the car accident was a DUI at the time. In other words, by Plaintiff's own admission, PNC enforced its call-out procedures without regard to his alleged disability. Moreover, Plaintiff has failed to demonstrate the existence of others who violated PNC's call-out procedures who were not similarly disciplined — if only because Plaintiff was the only person to continuously violate the policy. SOF ¶ 42; RSOF ¶ 42. And Plaintiff proffers no evidence to dispute the legitimacy of PNC's call-out procedures. In sum, there are no record facts that would cause a reasonable fact finder to find that Plaintiff's termination was due to his alcoholism and Plaintiff's supposition is not enough.[5] See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 799-800 (3d Cir. 2003) (a plaintiff may "defeat a motion for summary judgment by providing evidence that would allow a fact finder reasonably to (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action.") (internal citations and quotations omitted); Hatch v. Franklin Cty., 755 F. App'x 194, 198 (3d Cir. 2018) ("The non-moving party must present more than just bare assertions, conclusory allegations, or suspicions to show the existence of a genuine issue.") (internal citations and quotations omitted).

In the end, that Plaintiff may feel that the decision to terminate him for violating call-out procedures was wrong or mistaken — because he believed he was still able to do his job without adhering to these procedures — does not make it discriminatory. See Fuentes, 32 F.3d at 765

---

[5] Plaintiff also alleges that O'Brien's demeanor towards him changed and that he had to participate in weekly check-ins with O'Brien which no other financial advisor had to do upon his return from his second leave. Plaintiff describes O'Brien as becoming "noticeably cold" towards him and her demeanor as "toxic" upon his return from his second leave, but also indicates that their relationship was never particularly good from the beginning and lacked "warmth." Pl. Aff. at ¶ 36-37; Pl. Dep. 72:4-21 ("[I] don't think she liked me from day one.").

("To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."). Under these facts, the Court cannot find that Plaintiff has provided record evidence that would allow a fact finder to find that his alcoholism was more likely than not the reason for PNC's termination decision.

### C. Retaliation under ADA, PHRA and FMLA

To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that "(1) [he] engaged in a protected activity, (2) [he] subsequently or contemporaneously suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse action. Wells v. Retinovitreous Assocs., Ltd., 702 F. App'x 33, 36 n.14 (3d Cir. 2017) (see also EEOC v. Allstate Ins. Co., 778 F.3d 444, 448–49 (3d Cir. 2015) (applying the ADA standard); Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 256, 258 (applying the FMLA standard); Daniels v. Sch. Dist. of Phila., 776 F.3d 193, 193 (applying the PHRA standard)).

Assuming Plaintiff could prove that he engaged in protected activity by voicing an intention to take another leave, Plaintiff is not able to make out a *prima facie* case because he cannot satisfy the third prong: that there was a causal link between the protected activity and his termination. Plaintiff was terminated for a separate event that severed the causal link — violating call-out procedures. Drwal v. Borough of West View, Pa., 617 F. Supp. 2d 397, 424 (W.D. Pa. 2009) ("intervening workplace impropriety breaks the chain of causation between protected activity and retaliatory acts."). Plaintiff does not dispute the underlying conduct that resulted in his termination. There is arguably some degree of temporal proximity, but that, without more, is not compelling, particularly where, as here, Plaintiff knew he could be

terminated for particular conduct and then purposefully engaged in that particular conduct. Drwal, 617 F. Supp. 2d at 422 (W.D. Pa. 2009) (internal citations omitted) ("It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn.").

Assuming *arguendo*, that Plaintiff would be able to make out a *prima facie* case, the Court also finds that there was no pretext. PNC's proffered reason has not been rebutted. Moreover, PNC allowed Plaintiff to take two leaves for alcoholism in the past, undermining his contention that his termination was retaliatory. See Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 17 (1st Cir. 1997) ("[E]vidence that an employer willingly granted an employee's request for an accommodation, though by no means dispositive of the matter, tends to militate against making an inference of retaliation"). Put simply, Plaintiff presents no evidence that PNC would not have accommodated Plaintiff's leave request again and no evidence that the proffered reason for his termination is pretext for retaliation.

To the extent Plaintiff attempts to show that the increased scrutiny of his attendance and adherence to call-out procedures following his return from his second leave of absence was retaliatory, the Court finds that increased surveillance of Plaintiff in the form of simply asking him to adhere to call-out procedures cannot be considered an adverse action. Plaintiff does not allege that there was any other material change in his employment status, responsibilities, pay or duties and Plaintiff has not demonstrated that similarly-situated individuals were treated more favorably. C.f. Jakomas v. City of Pitt., 342 F. Supp. 3d 632, 645 (W.D. Pa. 2018) (finding that employee suffered adverse employment action when employer assigned her menial tasks that were outside of her job description, such as organizing and cleaning offices upon return from

leave). Plaintiff essentially asks that this Court to hold that PNC may not enforce its policies against him because he happens to be in a protected class — this is not the law. See Flory v. Pinnacle Health Hosps., 346 F. App'x 872 (3d Cir. 2009) (affirming district court's grant of summary judgment in case where employer submitted evidence employee was terminated for willful misconduct, not because of her disability).

### D. Failure to Accommodate under ADA and PHRA

Plaintiff does not address Defendant's alleged failure to accommodate with respect to Defendant's disability (Counts II and IV (as an alternative argument)) under the ADA and PHRA in his Response. Defendant argues that any failure to accommodate claims must fail as a matter of law. Brief at 16. To establish a *prima facie* case of failure to accommodate under the ADA and PHRA, a plaintiff must allege that (1) he was disabled and his employer knew it; (2) he requested an accommodation; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated. Capps v. Mondelez Glob., LLC, 847 F.3d 144, 157 (3d Cir. 2017). The parties acknowledge that O'Brien knew about Plaintiff's alcoholism. Viewing the facts and inferences in the light most favorable to Plaintiff, the Court finds that Plaintiff satisfies the second prong — that he requested an accommodation in the form of a potential leave in the future in early to mid-May 2018. See Capps, 847 F.3d at 156 (3d Cir. 2017) (recognizing that a request for FMLA leave may qualify, in certain circumstances, as a request for a reasonable accommodation under the ADA). The Court finds, however, that Plaintiff cannot satisfy the third and fourth prongs, and Plaintiff does not even attempt to do so. Simply put, Plaintiff has not met his burden with respect to those prongs.

E. **Interference under FMLA**

To bring a claim of interference under Family and Medical Leave Act, Plaintiff must establish: (1) he was eligible employee under FMLA; (2) PNC was an employer subject to FMLA's requirements; (3) he was entitled to FMLA leave; (4) he gave notice to defendant of his intention to take FMLA leave; and (5) he was denied benefits to which he was entitled under FMLA. See Lombardo v. Air Prod. & Chemicals, Inc., 2006 WL 1892677, at *3 (E.D. Pa. July 7, 2006). In contrast to an FMLA retaliation claim, "[a]n interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA" and a McDonnell Douglas burden-shifting analysis is not required. Capps v. Mondelez Glob., LLC, 847 F.3d 144, 155 (3d Cir. 2017) (internal quotations and citations omitted). Assuming Plaintiff had successfully given notice to PNC in early to mid-May 2018 of his intention to take FMLA leave, Plaintiff does not assert he was denied FMLA benefits, only that he was terminated after giving notice of his intention to take FMLA leave. Had he gotten to the point of specifically requesting FMLA leave for a specified period of time, given PNC's history with him, there is no evidence he would have been denied such benefits. Plaintiff is not able to satisfy the fifth prong, because Plaintiff is not able to show that FMLA benefits were actually withheld. See Ross v. Gilhuly, 755 F.3d 185, 192 (3d Cir. 2014). Aside from pure speculation, there is no evidence that Plaintiff was terminated to thwart his FMLA leave. The undisputed evidence establishes that Plaintiff was terminated for a violation of PNC's call-out procedures before PNC had a chance to deny or grant Plaintiff's leave.[6]

---

[6] The Court also notes that Plaintiff formally applied for FMLA leave after his termination, which was denied due to his termination, but this fact is irrelevant.

## II. ORDER

Consistent with the foregoing, the Court finds Defendant is entitled to summary judgment, and its Motion (**Doc. 35**) is **GRANTED**.  This case will be marked closed.

IT IS SO ORDERED.


March 31, 2022                                              s\Cathy Bissoon
                                                                         Cathy Bissoon
                                                                         United States District Judge


cc (via ECF email notification):

All Counsel of Record